UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOEL TORRES,

                        Petitioner,

        v.                                                          9:18-CV-0344
                                                                    (DNH)
ELIZABETH O'MEARA,

                        Respondent.

_____

APPEARANCES:                                        OF COUNSEL:

JOEL TORRES
Petitioner, pro se
15-B-0794
Franklin Correctional Facility
P.O. Box 10
Malone, New York 12953

HON. LETITIA JAMES                                  MICHELLE ELAINE MAEROV, ESQ.
Attorney for Respondent                             Ass't Attorney General
New York State Attorney General
The Capitol
Albany, New York 12224

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

        Petitioner Joel Torres ("Torres" or "petitioner") seeks a writ of habeas corpus pursuant

to 28 U.S.C. § 2254.  Dkt. No. 1, Petition ("Pet.").

        On March 27, 2018, the Court directed a response to Torres's petition.  Dkt. No. 2,

Decision and Order.

        On September 11, 2018, respondent filed an opposition to the petition.  Dkt. No. 10,

Respondent's Answer ("Ans."); Dkt. No. 10-1, Respondent's Memorandum of Law ("R.

Memo."); Dkt. No. 11, State Court Records ("SCR"); Dkt. No. 12, Transcripts.

On October 10, 2018, Torres filed a reply. Dkt. No. 16, Traverse. For the reasons that follow, petitioner's habeas petition is denied and dismissed.

## II. RELEVANT BACKGROUND

### A. Overview

The facts associated with the circumstances leading up to, and as a result of, the criminal trial are not in dispute. Specifically,

> In December 2013, members of the City of Amsterdam Police Department conducted a controlled buy in which a confidential informant (hereinafter CI) purchased narcotics . . . [Petitioner] was charged in a multi-count indictment with various crimes and, after a jury trial, [petitioner] was convicted of one count of criminal sale of a controlled substance in the third degree and one count of criminal possession of a controlled substance in the third degree. County Court thereafter sentenced [petitioner] to concurrent prison terms of seven years, followed by three years of postrelease supervision.

*People v. Torres*, 146 A.D.3d 1086, 1086-87 (3rd Dep't 2017).

### B. The Trial

Prior to testifying for the prosecution, and outside the presence of the jury, the CI alerted the court and the attorneys that he intended to testify that Torres was not the one who sold him drugs. T. 261-62, 264-66.[1] Instead, the CI stated that he "want[s] to cop the 5th and not say nothing[.]" T. 275-76. Shortly thereafter, the CI abruptly changed his mind, however, and agreed to answer questions if he felt they would not incriminate him. T. 284.

The trial court offered to appoint counsel for the CI, T. 279-80, 284-85, but he

---

[1] The trial transcript was one of several transcripts included within Docket No. 12. The trial transcript spanned CM/ECF numbered pages 15 through 866. For ease of reference, citations to the trial transcript will be abbreviated "T." and will refer to the pagination of the transcript (as opposed to the pagination automatically generated by CM/ECF).

repeatedly declined the offer, T. 280-81, 284. Eventually, the jury was recalled and the CI was placed under oath. T. 285-86. The CI testified that he knew Detective Pratt, the officer in charge of the controlled buy, and agreed to participate in a buy for him. T. 287-88, 293-94. However, the CI could not remember where he was on the date of the controlled buy. T. 291-92. Further, the CI was unable to read, so he could not review his grand jury testimony to refresh his recollection or account for where exactly he made the controlled buys because he could not read the street signs. *Id.*

The CI confirmed that he knew Torres, but testified that he had never purchased drugs from him. T. 299, 301-302. The CI specifically recounted that the person he bought the drugs from was "not in th[e] courtroom, that's for sure," and that he "d[i]dn't know his name . . . [he] just went up to him, and [the CI] bought the drugs." T. 294-96.

The People then questioned Detective Pratt. T. 302-376. Pratt stated that all controlled buys began with confidential informants undergoing a strip search "to make sure [the CI had] no illegal narcotics on him or money of his own[.]" T. 306-07. This buy was no different, and after the CI was searched, Pratt provided him with marked money for the controlled buy and an audio transmitter to record the CI's conversations. T.324-25. Pratt drove the CI to Voorhees Street ("Voorhees"), parked the car, and watched as the CI exited the car, walked down Voorhees, and then turned right onto East Main Street ("East Main"). T. 328. While Pratt could no longer see the CI after he turned down East Main, he could hear him speaking to people as he walked. T. 364. Pratt commented that the CI "knows everybody [in that area] in passing." T. 364-65.

When the CI turned onto East Main, his surveillance was taken over by Detective

DiCaprio, who was located on East Main between Voorhees and John Street ("John"). T.

519. DiCaprio heard Pratt drive the CI to Voorhees and then saw the CI walk from the corner

of Voorhees, across East Main, and then turn and proceed down John. T. 522-23. DiCaprio

noted that the CI "didn't stop . . . to talk to anyone that [he] saw. [The CI] may have passed

people, but [DiCaprio] d[id]n't believe he stopped to talk to anybody." T. 526. However,

DiCaprio did see the CI talking on his phone as he was walking to the controlled buy

location. T. 527.

As the CI proceeded down John, Detective Spaulding took over the surveillance. T.

430. Spaulding was sitting in a car, parked on John, and watched as a man stopped behind

her car to meet with the CI. T. 435-36, 39-40. During the trial, Spaulding identified Torres as

the man who stopped behind her car to meet with the CI. T. 436. Spaulding observed that it

was just the two of them interacting with one another on the street. T. 440. She could also

hear their conversation over the audio device and watched "them . . . exchange

hands . . . [as i]f I'm handing you something and you take it from my hand." T. 441-42. After

this quick exchange, petitioner retreated to a house on John and the CI began walking back

towards the direction from which he initially came. T. 442-43.

The CI then returned into the view of Detective DiCaprio, who watched the CI walk

back up John, turn left onto East Main, continue back toward Voorhees, and eventually turn

left onto Voorhees. T. 527-28 ("In other words, [the CI] came up [Voorhees], went across

[East Main], went down [John], came back up [John], across [East Main] and back down

[Voorhees] again."). DiCaprio noted that he had continuous sight of the CI during that time,

and the CI never stopped to speak or interact with anyone. T. 529. As the CI began to leave

4

DiCaprio's view, DiCaprio radioed to Pratt that the CI was now on Voorhees within Pratt's eyesight. *Id.*

Pratt testified the CI returned to his car and handed him two glassine bags and the audio transmitter. T. 332-33. Pratt and the CI went back to the precinct where the CI was again strip searched. *Id.* Nothing was found during the search. *Id.* Lastly, the substance within the bags tested positive for heroin. T. 530-31; *see also* T. 557-58 (stipulating that the substance in the glassine bags was a controlled substance); SCR 38-39 (Controlled Substances Report confirming the bag tested contained heroin).[2]

During cross-examination, Pratt acknowledged that the CI seemed to stop walking a few times on the audio recording, when the CI was outside of Pratt's line of sight. T. 365-66. All the detectives commented that the CI was speaking to people, either as he passed them on the street or during the course of a phone call, while he was walking to and from the location of the controlled buy. T. 367-68, 447-48, 526-27. Nevertheless, the jury convicted Torres of one count of criminal sale of a controlled substance in the third degree and one count of criminal possession of a controlled substance in the third degree. *Torres*, 146 A.D.3d at 1086-87.

### C. Direct Appeal

Torres filed a counseled brief on direct appeal to the Appellate Division, Third Department. SCR 88-107. The petitioner alleged: (1) his conviction was against the weight and sufficiency of the evidence; (2) his due process rights were violated when the CI was

---

[2] The defense stipulated that it was "not going to contest chain of evidence or legitimacy of police transfers to and from the lab, to and from court, Grand Jury, et cetera, so we were going to stipulate to the legitimacy . . . of all the transfers, chain of evidence from the drugs from the time of their acquisition by Detective Pratt on the relevant dates forward, but that stipulation did not cover the acquisition of the drugs from the [petitioner] into Pratt's vehicle, so it is still our intention to object to the entry of the narcotics into the evidence[.]" T. 556-57.

called to the stand and permitted to testify that he, in fact, did not buy drugs from petitioner because the CI's testimony shifted the burden from the prosecution to the petitioner to prove the witness credible; (3) his Sixth Amendment right to confrontation was denied because the CI's diminished credibility prevented petitioner from effectively cross-examining him; and (4) the trial court erred in admitting evidence of the drugs because there was a break in the chain of custody. *Id.*

The Third Department affirmed Torres's conviction. *People v. Torres*, 146 A.D.3d 1086, 1087, 1088 (3rd Dep't 2017). First, the appellate court explained that a person is guilty of third degree criminal sale of a controlled substance where he "knowingly and unlawfully sold a narcotic drug." *Id.* at 1087 (citing N.Y. Penal Law § 220.39(1)). Further, a person is guilty of third degree criminal possession of a controlled substance where he "knowing and unlawfully possessed a narcotic drug with the intent to sell it." *Id.* (citing N.Y. Penal Law § 220.16(1)). The Third Department found that:

> [t]he trial testimony established that the CI was strip-searched prior to the controlled buy to ensure that he was not concealing any contraband, drugs or currency. The detectives gave the CI marked money for the controlled buy and equipped him with a wire. The detectives observed the CI approach the location for the subject transaction, and one detective testified that she witnessed the CI and [petitioner] meet on the street and that she saw them "exchange hands." [Petitioner] subsequently went inside a building and the CI walked away. The detectives continued their surveillance of the CI and watched him make no other stops as he returned to their vehicle. The CI turned over two glassine envelopes to the detectives. Upon their return to the police station, a strip search of the CI revealed nothing on his body.

*Id.* at 1087. The Third Department ultimately concluded that the "verdict was based upon legally sufficient evidence." *Id.*

6

The appellate court similarly determined that the conviction was not against the weight of the evidence. *Torres*, 146 A.D.3d at 1087. Specifically,

> [w]hile the detective who witnessed the subject transaction did not see what was physically exchanged between the two of them, the CI testified that, after he asked [petitioner] whether he had "crack," "[petitioner] said yes. He gave me the crack. I gave him the money, and I walked back to the [o]fficer." Furthermore, even though the CI did not identify [petitioner] as the seller, the detective who witnessed the exchange between the CI and [petitioner] positively identified [petitioner] at trial as the seller. As such, viewing the evidence in a neutral light, we conclude that the weight of the evidence supported the jury's verdict.

*Id.*

The Third Department was also unpersuaded by Torres's arguments about the incomplete chain of custody. While there was a stipulation that, after Pratt received the narcotics, the chain of custody was untouched, petitioner contends that "gaps in the chain of custody existed prior to that point," rendering the evidence inadmissible. *Id.* at 1088. The Third Department stated that:

> [g]aps in the chain of custody may be excused when circumstances provide reasonable assurances of the identity and unchanged condition of the evidence" *People v. Hawkins*, 11 N.Y.3d 484, 494 . . . (2008)(citation omitted). In view of the testimony of the CI and the detectives, who strip-searched the CI before and after the controlled buy and constantly observed him as he approached the controlled buy, interacted with [petitioner] and thereafter return to the detectives (*see People v. Green*, 90 A.D.3d 1151, 1154 . . . (2011), *lv. denied* 18 N.Y.3d 994 . . . (2012); *People v. Long*, 9 A.D.3d 495, 497–498 . . . (2004), and inasmuch as [petitioner] does not claim that the evidence was tampered with (*see People v. Wilkerson*, 167 A.D.2d 662, 664 . . . (1990), *lv. denied* 78 N.Y.2d 958 . . . (1991), we conclude that the People provided the necessary reasonable assurances as to identity and unchanged condition of the narcotics. Moreover, any gaps in the chain of custody go to the weight of the evidence and not its admissibility.

*Id.* Lastly, the court found petitioner's contentions about the CI's testimony and his ability to confront the CI "to be without merit." *Id.*

On January 16, 2017, Torres sent a counseled application seeking leave to appeal to the New York Court of Appeals. SCR 420-21. Petitioner set forth two grounds in his appeal: (1) the verdict was "based upon legally insufficient evidence and [was] against the weight of the evidence" and (2) "gaps in the chain of custody of narcotics . . . [failed to] provide[] the necessary reasonable assurances as to the identify and unchanged condition of the narcotics as to render the narcotics admissible[.]" SCR 420.

On June 13, 2017, the Court of Appeals denied leave to appeal. SCR 422; *see also People v. Torres*, 29 N.Y.3d 1087 (2017).

## III. **THE PETITION**

Torres seeks habeas relief on the following grounds: (1) petitioner's convictions were all pursuant to legally insufficient evidence and the verdicts were against the weight of the evidence (Pet. at 5); (2) petitioner's due process rights were violated when the CI was called to testify, knowing in advance that the CI intended to testify contrary to his grand jury testimony, effectively shifting the burden of proof onto petitioner (*id.* at 7); and (3) the trial court erred in admitting the controlled substance into evidence because the prosecution failed to establish the entire chain of custody (*id.* at 8).

## IV. **DISCUSSION**

### A. **Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant habeas corpus relief with respect to a claim adjudicated on the merits in

state court only if, based upon the record before the state court, the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §§ 2254(d)(1), (2).

This standard is "highly deferential" and "demands that state-court decisions be given the benefit of the doubt." *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per curiam) (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal quotation marks omitted)). The Supreme Court has repeatedly explained that "a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with th[e Supreme] Court's precedents.'" *Nevada v. Jackson*, 569 U.S. 505, 508-09 (2013) (per curiam) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

Additionally, the AEDPA foreclosed "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 567 U.S. 37, 38 (2012) (per curiam) (quoting *Renico,* 559 U.S. at 779). A state court's findings are not unreasonable under §2254(d)(2) simply because a federal habeas court reviewing the claim in the first instance would have reached a different conclusion. *Wood v. Allen*, 558 U.S. 290, 301 (2010). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable–a substantially higher threshold." *Schriro*, 550 U.S. at 473.

Federal habeas courts must presume that the state courts' factual findings are correct

unless a petitioner rebuts that presumption with "clear and convincing evidence." *Schriro*, 550 U.S. at 473-74 (quoting 28 U.S.C. § 2254(e)(1)). "A state court decision is based on a clearly erroneous factual determination if the state court failed to weigh all of the relevant evidence before making its factual findings." *Lewis v. Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015) (internal quotation marks omitted). Finally, "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits[.]" *Johnson v. Williams*, 568 U.S. 289, 301 (2013).

## B. <u>Weight of the Evidence</u>

Torres asserts that his convictions are against the weight of the evidence. Pet. at 5. Respondent contends that petitioner has failed to allege a cognizable habeas claim. R. Memo. at 11-14.

"It is well-settled that claims attacking a verdict as against the weight of the evidence are not cognizable in a federal habeas proceeding." *Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 360 (N.D.N.Y. 2013); *see also McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 Fed. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that the verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus.") (citing cases). Accordingly, Torres's claims regarding the weight of the evidence are dismissed.

## C. <u>Legal Sufficiency</u>

Torres next asserts that the evidence was legally insufficient to support his convictions. Pet. at 5. Specifically, petitioner contends that (1) the CI testified he never

purchased drugs from petitioner; (2) the detective never actually saw "an exchange of money for drugs;" (3) the prosecution witnesses' testimony were inconsistent with one another; and (4) the audio recordings were inaudible. *Id.*[3]

Respondent opposes Torres's claims, arguing that (1) the strip search of the CI before and after the controlled buy insured that the CI had no extra cash or drugs other than that which was provided to him by the police or which he acquired during the buy; (2) the CI was under constant surveillance; (3) the detective's observations of the petitioner shaking hands, making physical contact, and exchanging something with the CI was corroborating testimony for petitioner's guilt; (4) the CI made no other physical contact with anyone else from which he could have received the drugs; and (5) the CI returned, without any money, but with a controlled substance. R. Memo. at 12-14.

"[T]he critical inquiry on [the] review of the sufficiency of the evidence . . . [is] whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). The reviewing court must determine if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis in original).

In so doing, the reviewing court must be mindful that, when "faced with a record of historical facts that supports conflicting inferences [it] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith*, 565 U.S. 1, 7 (2011)

---

[3] Petitioner reiterates these same arguments in his Traverse. Dkt. No. 16 at 2-3.

(internal quotation marks and citations omitted).  In seeking habeas corpus review, a petitioner who claims that the evidence was insufficient to sustain a conviction bears a "very heavy burden."  *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000).

In this case, Torres was guilty of third degree criminal sale of a controlled substance only if he "knowingly and unlawfully s[old] a narcotic drug."  *Torres*, 146 A.D.3d at 1087.  Further, petitioner is only guilty of third degree criminal possession of a controlled substance if he "knowing and unlawfully possessed a narcotic drug with the intent to sell it."  *Id.*

The Appellate Division found that the collective testimony of the detectives provided sufficient, corroborating evidence to sustain Torres's conviction.  *Id.* at 1087.  The trial testimony established that the CI had no drugs or currency prior to the controlled buy.  *Id.*  The detectives continuously observed the CI, and the only time the detectives saw him stop or have physical contact with another person was when he was engaged in a hand-to-hand transaction with another man, later identified by a detective as petitioner.  *Id.*  The CI testified that he specifically asked for, and obtained, drugs from this man.  *Id.*  The CI then gave the police two glassine baggies of controlled substances, and a search upon their return to the precinct revealed no other hidden drugs or money.  *Id.*

"[T]h[e] Court's role is simply to determine whether there is any evidence, if accepted as credible by the trier of fact, sufficient to sustain conviction."  *Lane v. Graham*, 9:14-CV-1261 (JKS), 2016 WL 154111, at *8 (N.D.N.Y. Jan. 12, 2016) (citing *Schlup v. Delo*, 513 U.S. 298, 330 (1995)).  While Torres attempts to assert that minor inconsistencies should render his conviction invalid, the standard asks if there is *any evidence* which is sufficient to sustain

the conviction.  *Id.*  Viewing this sequence of events in the light most favorable to the

prosecution, as outlined above, supports the Third Department's determination that "the

verdict was based upon legally []sufficient evidence," more specifically, that petitioner

possessed a controlled substance, knowing it was a controlled substance, and met with and

sold it as such to the CI upon the CI's request.  *Torres*, 146 A.D.3d at 1087.

This sequence of events is inconsistent with the CI's testimony that, even though he

undoubtedly bought drugs, he did not buy them from Torres.  T. 294-96, 299, 301-302.  This

testimony alone, according to petitioner, should be enough to cast doubt on the sufficiency of

the evidence and conviction lodged against him.  Pet. at 5.

However, the jury has the ability to, and ultimately did, credit the witness testimony

however it sees fit.  *See e.g., Huber v. Schriver*, 140 F. Supp. 2d 265, 277 (E.D.N.Y. 2001)

("[U]nder both . . . state law . . . and federal law, issues of credibility, as well as the weight to

be given to evidence, are questions to be determined by the jury.").

The Third Department reasonably and correctly deferred to the jury's decision in

concluding that this "was based upon legally []sufficient evidence."  *Torres*, 146 A.D.3d at

1087.  Given that there is no clear and convincing evidence presented to disturb these

credibility determinations, they will retain their presumption of correctness and

remain.  *Huber*, 140 F. Supp. 2d at 277; *see also Maldonado v. Scully*, 86 F.3d 32, 35 (2d

Cir. 1996) ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for

the jury and not grounds for reversal on appeal[.]").

Torres also contends that the fact that no one actually saw him hand anyone drugs for

money means that the detective's testimony must be deemed incredible.  Pet. at

5.  Petitioner asserts that because he is heard speaking to several individuals on the

recording, there is the possibility he could have obtained drugs at a different time that day. *Id.* Alternatively, petitioner argues that the transaction could have occurred during periods of alleged inaudibility on the tape. *Id.* Such contentions are all in conflict with the detectives' contrary testimony. Petitioner again asks this Court to reevaluate the truthfulness of the detectives' collective testimony. However, second-guessing such credibility determinations made by the jury is inappropriate and not cognizable on habeas review. *Huber*, 140 F. Supp. 2d at 277; *Maldonado*, 86 F.3d 32 at 35. Accordingly, the legal sufficiency claims are also denied and dismissed.

### D.  SHIFTING THE BURDEN OF PROOF

Torres contends that his due process rights were violated when the trial court allowed the CI to testify despite advance knowledge that the CI intended to testify contrary to his grand jury testimony. Pet. at 7. Petitioner alleges this "shifted the burden [of proof] . . . to the [petitioner] to prove the witness was credible." *Id.* Respondent alleges that these claims are procedurally defaulted and meritless. R. Memo. at 14-17.

An application for a writ of habeas corpus may not be granted until a petitioner has exhausted all remedies available in state court unless "there is an absence of available State corrective process" or "circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254 (b)(1)(A), (B)(i), (ii). The exhaustion requirement "is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings[.]" *Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

To properly exhaust his claims, petitioner must do so both procedurally and

14

substantively.  Procedural exhaustion requires that the petitioner raise all claims in state court prior to raising them in a federal habeas corpus petition.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).  Substantive exhaustion requires that the petitioner "fairly present" each claim for habeas relief in "each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim."  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citations omitted).  In other words, petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.

Torres's claim is unexhausted.  Petitioner raised the claim that his due process and Sixth Amendment rights were violated on direct appeal (SCR 103-04); however, he never sought leave to appeal to the New York Court of Appeals on that ground (SCR 420-21).  "Because [petitioner] failed to raise this claim before the New York Court of Appeals, it was not preserved for review by the federal courts."  *McKinnon v. Superintendent, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011) (citing *inter alia O'Sullivan*, 526 U.S. at 845); *see also Smith v. Duncan*, 411 F.3d 340, 345 (2d Cir. 2005) (holding claims raised in an appellate brief and not further presented to the Court of Appeals are deemed abandoned).

Further, it is procedurally defaulted because Torres can no longer raise it in any state forum.  Petitioner already utilized the direct appeal to which he is entitled and, because the claim was reviewable from the record, he cannot raise it in a motion to vacate the judgment.  *See Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991) (explaining that where

15

"the one request for leave to appeal" was taken and additional collateral review would be barred because the issues could have been raised on direct appeal, "petitioner no longer has 'remedies available' in the . . . state courts . . . and . . . he had met the statutory exhaustion requirements . . .").

Procedurally defaulted claims are not subject to habeas review unless a petitioner shows cause for the default and actual resulting prejudice, or that the denial of habeas relief would result in a fundamental miscarriage of justice, i.e., that he or she is actually innocent. *House v. Bell*, 547 U.S. 518, 536-39 (2006); *Schlup*, 513 U.S. at 327; *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014); *see Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) ("'[A]ctual innocence' means factual innocence, not mere legal insufficiency.") (quoting *Bousley v. United States*, 523 U.S. 614, 623 (1998)). To establish cause, petitioner must show that some objective external factor impeded his ability to comply with the relevant procedural rule. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *Coleman*, 501 U.S. at 753. If a petitioner fails to establish cause, a court need not decide whether he suffered actual prejudice, because federal habeas relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (referring to the "cause-and-prejudice standard"); *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985).

Torres has not alleged, and the record does not support, any contentions of cause or actual innocence. Because cause has not been established, no discussion of prejudice is necessary. In any event, any discussion of prejudice would be futile because petitioner's claims are also meritless. Petitioner cites to no case holding that a prosecutor improperly

shifts the burden of proof by calling a witness who is likely to exonerate the petitioner, and the Court knows of and could find no such authority either.

Further, the prosecution's burden was repeated by all parties and the court throughout the course of the trial.  T. 80-81, 152 (court discussing burden of proof during jury selection); T. 212 (court instructing jury on burden of proof in initial comments); T. 673, 675 (petitioner's trial counsel emphasizing prosecution's burden of proof); T. 701-03 (court providing jury charge); T. 702 ("The burden of proof never shifts from the People to the [petitioner]."). "[J]uries are presumed to follow their instructions[.]" Richardson v. March, 481 U.S. 200, 211 (1987).  There is nothing to indicate that the jury misunderstood or failed to do as they were told.  For the reasons previously stated, there was legally sufficient evidence presented demonstrating the prosecution successfully met its burden of proof.  Thus, there is nothing that can save petitioner's procedurally defaulted claim.  Accordingly, habeas relief is precluded.

### E.  CHAIN OF CUSTODY

Torres contends that his due process rights were violated when the trial court erred in admitting the controlled substance into evidence because (1) the CI denied that he bought the drugs from the petitioner, indicating there was a gap in the chain of custody; (2) Spaulding never actually saw the exchange of drugs for money; and (3) the CI was capable of tampering with the evidence which he had sole possession and control over it.  Pet. at 8.[4]  Respondent alleges that the arguments are procedurally barred, non-cognizable, and meritless.  R. Memo. at 18-22.

---

[4] Petitioner essentially asserts the same arguments in his Traverse.  Dkt. No. 6 at 7.

Torres's claims are again procedurally defaulted. As outlined above, throughout the state appellate process, the federal nature of the claims must be identified so as to "fairly present" them to the court. *Daye*, 696 F.2d at 191.

> [T]he ways in which a state defendant may fairly present to the state courts the constitutional nature of his claim, even without citing chapter and verse of the Constitution, include (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

*Id.* at 194. If a claim is not "fairly presented," it is unexhausted. Where federal courts have found a failure to exhaust, claims can then be considered procedurally defaulted. *Clark*, 510 F.3d at 390.

Torres's arguments that the trial court erred in admitting evidence of the controlled substance into the trial were presented to the state court as alleged violations of state law. SCR 105-07. There was no citation to federal cases, reliance on state cases utilizing a constitutional analysis, or assertion of the claim or pattern of facts in a way to call to mind a federal right. Instead, petitioner relied upon eight state cases, advancing propositions all grounded in New York state case law. *Id.* Accordingly, the claims remain unexhausted because the state courts were never alerted to the constitutional nature of the claims.

Furthermore, because Torres is "entitled to one (and only one) appeal to the Appellate Division and one request for leave to appeal to the Court of Appeals," he cannot return to the state courts in an attempt to exhaust his claim. *Aparcio v. Artuz*, 269 F.3d 78, 91 (2d Cir. 2001). Accordingly, "[b]ecause [petitioner] failed to raise his claim in the ordinary appellate process and can now no longer do so, it is procedurally defaulted." *Spence v.*

18

*Superintendent, Great Meadow Corr. Facility*, 219 F.3d 162, 170 (2d Cir. 2000).

As before, recovery pursuant to procedural default will be barred unless the petitioner demonstrates either cause and prejudice or a fundamental miscarriage of justice. Here again, Torres does not identify any cause for his default, and he does not argue that he is actually innocent. Because cause was not established, no discussion of prejudice is necessary.

Torres also suffered no prejudice because his chain of custody claims are meritless. "Federal courts in New York have held that a chain of custody argument is a matter governed by New York law and provides no basis for federal habeas relief." *Danford v. Graham*, No. 9:12-CV-0201 (JKS), 2014 WL 1412492, at *5 (N.D.N.Y. Apr. 11, 2014); *see also Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law," such as incorrectly admitting evidence)*; Gonzalez-Pena v. Herbert*, 369 F. Supp. 2d 376, 387 (W.D.N.Y. 2005) ("[Petitioner's] chain of custody argument presents a question of State evidentiary law that generally is not amendable to habeas review.").

Federal courts may issue a writ of habeas corpus based upon a state evidentiary error only if the petitioner demonstrates that the alleged error violated an identifiable constitutional right and that the error was "'so extremely unfair that its admission violates fundamental conceptions of justice.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.1998) (quoting *Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 674, 107 L.Ed.2d 708 (1990)); *see also Jones v. Conway*, 442 F.Supp.2d 113, 130 (S.D.N.Y. 2006) (quotation omitted).

"A petitioner 'bears a heavy burden because evidentiary errors generally do not rise to constitutional magnitude.'" *Bristol v. Superintendent*, No. 9:04-CV-1230 (FJS), 2008 WL

2097160, at * 7 (N.D.N.Y. May 19, 2008) (internal quotations and citations omitted). Under New York law, failure to establish a chain of custody may be excused where the circumstances provide reasonable assurances of the identity and unchanged condition of the evidence. . . . Furthermore, both Federal and State law clearly hold that a defect in the chain of custody goes to the weight of the evidence, not its admissibility. *Gonzalez-Pena*, 369 F. Supp. 2d at 387 (citation and internal quotation marks omitted).

Upon review, Torres has failed to satisfy this heavy burden. Petitioner seems to claim a fundamental deprivation by reiterating the same allegations he proffered for a legally insufficient conviction. However, for the reasons previously discussed, petitioner's contentions fail because his conviction is supported by legally sufficient evidence.

Moreover, the Third Department held the evidence from the trial, specifically the strip searches, constant observation of the CI during the controlled buy, the CI's interaction with the petitioner, and the lack of claims of evidence tampering, *Torres*, 146 A.D.3d at 1088, "provided reasonable assurances of the identity and unchanged condition of the [controlled substance], and this Court is bound by the state court's conclusion absent any indication that [petitioner] was denied a fundamentally []fair trial." *Danford*, 2014 WL 1412492, at *5 (citing *Collins v. Scully*, 755 F.2d 16, 18 (2d Cir. 1985).

There is no evidence demonstrating Torres was denied a fair trial. Thus, there is nothing that can save petitioner's procedurally defaulted claim: habeas relief is precluded. Accordingly, the petition is denied and dismissed.

## V. **CONCLUSION**

Therefore, it is

ORDERED that

1.  The petition (Dkt. No. 1) is **DENIED AND DISMISSED IN ITS ENTIRETY**;

2.  No Certificate of Appealability ("COA") shall issue because petitioner failed to make a "substantial showing of the denial of a constitutional right" as 28 U.S.C. § 2253(c)(2) requires;[5]

3.  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals (Fed. R. App. P. 22(b)); and

4.  The Clerk of the Court shall serve a copy of this Decision and Order on the parties in accordance with the Local Rules.

IT IS SO ORDERED.

Dated: February 12, 2019
      Utica, New York.

United States District Judge

---

[5] *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see Richardson v. Greene*, 497 F.3d 212, 217 (2d Cir. 2007) (holding that if the court denies a habeas petition on procedural grounds, "the certificate of appealability must show that jurists of reason would find debatable two issues: (1) that the district court was correct in its procedural ruling, *and* (2) that the applicant has established a valid constitutional violation" (emphasis in original)).